EAST BATON ROUGE PARISH
Filed Mar 10, 2022 10:41 AM
Deputy Clerk of Court
E-File Received Mar 10, 2022 9:27 AM

C-716692
27

19th JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO._____                                    DIVISION "___"

LARRY POLIZZI

VERSUS

SALESIANS OF DON BOSCO (a/k/a SALESIANS OF DON BOSCO, CANADA AND
EASTERN USA) (a/k/a SALESIANS OF DON BOSCO, PROVINCE OF ST. PHILIP THE
APOSTLE) (d/b/a SALESIAN SOCIETY, INC.); SCHOOL SISTERS OF NOTRE DAME
CENTRAL PACIFIC PROVINCE, INC. (f/k/a SCHOOL SISTERS OF NOTRE DAME OF
THE SOUTH CENTRAL PROVINCE); ABC INSURANCE COMPANY & XYZ
INSURANCE COMPANY

FILED: _____       _____
                                              DEPUTY CLERK

## PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes LARRY POLIZZI
(hereinafter "PETITIONER"), a person of full age who is and was domiciled in the State of
Louisiana during all times relevant, and who respectfully represents as follows:

1.

The following parties are made DEFENDANTS in this lawsuit and are liable to Petitioner
for damages, together with legal interest from the date of the judicial demand until paid:

    a.  **SALESIANS OF DON BOSCO** (a/k/a **SALESIANS OF DON BOSCO,
CANADA AND EASTERN USA**) (a/k/a **SALESIANS OF DON BOSCO,
PROVINCE OF ST. PHILIP THE APOSTLE**) (d/b/a **SALESIAN SOCIETY,
INC.**) (hereinafter "SALESIANS"), a foreign corporation registered and doing
business in Louisiana with a principal business establishment at 1000 Salesian
Lane, Marrero, Louisiana;

    b.  **SCHOOL SISTERS OF NOTRE DAME CENTRAL PACIFIC PROVINCE,
INC.** (f/k/a **SCHOOL SISTERS OF NOTRE DAME OF THE SOUTH
CENTRAL PROVINCE**) (hereinafter "SISTERS"), a foreign corporation that did
business and is doing business in Louisiana with a principal place of business at
320 East Ripa, St. Louis, Missouri. At the time of the sexual abuse alleged herein,



1

the entity responsible for the business and activities of the School Sisters of Notre Dame religious order in Louisiana was known as the School Sisters of Notre Dame of the South Central Province. In or around 2011, the South Central Province was consolidated and reorganized into the School Sisters of Notre Dame Central Pacific Province, Inc.

c. **ABC INSURANCE COMPANY**, upon information and belief, a foreign insurance company authorized to and doing business in the State of Louisiana which is believed to have issued a policy insuring defendants, **SALESIANS and/or SISTERS**, for the acts complained of herein and during the relevant time periods herein.

d. **XYZ INSURANCE COMPANY**, upon information and belief, a foreign insurance company authorized to and doing business in the State of Louisiana which is believed to have issued a policy insuring defendants, **SALESIANS and/or SISTERS**, for the acts complained of herein and during the relevant time periods herein.

2.

Venue is proper in this the Parish of East Baton Rouge, State of Louisiana, pursuant to Louisiana Code of Civil Procedure art. 42(7) as ABC INSURANCE COMPANY and XYZ INSURANCE COMPANY are foreign insurance companies. The acts and omissions giving rise to this cause of action are alleged to have occurred in whole or in part in Jefferson Parish, where the Defendants SALESIANS and SISTERS (hereinafter collectively referred to as "DEFENDANTS") each failed to supervise its employees as well as Petitioner, a minor child entrusted to Defendants' care at the time of the abuse.

3.

At all times relevant, DEFENDANTS were religious orders of the Roman Catholic Church who conducted business activities throughout the State of Louisiana at the time of the sexual abuse alleged herein. This included, but was not limited to, assigning priests and nuns to operate Hope Haven and Madonna Manor, adjoining residential facilities for orphans and troubled children

located in Marrero, Louisiana, including the employees accused of sexually abusing Petitioner, as set forth herein.

4.

Because of the collaborative actions by the Defendants, they are justly and truly indebted unto Petitioner jointly and *in solido* for all damages. Pursuant to L.S.A.-C.C. Art. 2324 they are solidarily liable for the damages incurred by Petitioner for their conspiracy to commit the intentional and willful actions as listed and described herein, together with the legal interest thereon from the date of judicial demand and all costs for these proceedings.

<u>FACTS RELATING TO PETITIONER</u>

5.

Petitioner was born in 1962.

6.

In or around 1976, Petitioner got into trouble for truancy and, as a consequence, was sent to live at Hope Haven by the judge overseeing his truancy case.

7.

Petitioner was raised by a devoutly religious mother who taught him to revere and respect all religious authority figures, including Catholic priests and nuns. This included Fr. SEAN LEO ROONEY, *S.D.B.* ("ROONEY") and Sister ALVIN MARIE HAGAN, *SSND* ("HAGAN") (hereinafter collectively referred to as "THE PERPETRATORS").

8.

At all times relevant, Petitioner was a minor parishioner entrusted to the care and custody of DEFENDANTS' employees and agents, including, but not limited to, THE PERPETRATORS and their respective religious superiors.

9.

Over the course of several months in approximately 1976, THE PERPETRATORS sexually abused Petitioner by engaging the then-minor Petitioner in illegal sexual contact, including but not limited to, fondling and masturbation, during Petitioner's nightmarish stay at Hope Haven.

10.

As a result of the sexual abuse by THE PERPETRATORS, Petitioner has suffered a lifetime of physical and psychological effects.

## FACTS RELATING TO DEFENDANTS' LIABILITY

11.

ROONEY was ordained a Roman Catholic priest by SALESIANS in 1966.   Throughout his tenure with SALESIANS, ROONEY was assigned to various high schools and churches staffed by SALESIANS. Upon information and belief, he held the following positions during the course of his career with SALESIANS:

- 1959-1968: St. Dominic Savio High School (Boston, MA)
- 1968-1971: Salesian Day High School for Boys; Salesian Resident Junior Seminary; Camp Salesian for Boys; Salesian Retreat House for Boys; Salesian Boys Club (Cedar Lake, IN)
- 1971-1975: Don Bosco Technical High School (Paterson, NJ)
- 1975-1979: Archbishop Shaw High School (Marrero, LA)
- 1979-1981: Salesian Junior Seminary (Goshen, NY)
- 1981-1983: Don Bosco High School for Boys (Ramsey, NJ)
- 1983-2003: St. John Bosco Church (Birmingham, AL)
- 1983-2003: Holy Rosary (Birmingham, AL)
- 2003-2008: Salesian Provincial House (New Rochelle, NY)

12.

ROONEY remained a priest with SALESIANS until 2008, when he was laicized by the Holy See. He has since been accused of molesting multiple children he met through his position as a Salesian priest, and his name appears on several lists of priests credibly accused of sexual abuse that have been published by various dioceses across the country, as well as the list published by SALESIANS in 2021.   Upon information and belief, ROONEY's laicization was directly related to allegations that he sexually abused minor children entrusted to his care as a priest.

13.

HAGAN entered the SISTERS in 1952 and professed her vows as a member of SISTERS in 1953 and remained a member until her death in 2007.

14.

At all times relevant hereto, each of the Provincial Superiors of SALESIANS ("the Salesian Provincial"), by virtue of their respective office, acted as managing agents of the SALESIANS and were ultimately responsible for the supervision, oversight, management, retention, and control of the actions and conduct of all SALESIAN priests, including ROONEY, as well as the safety and well-being of the children entrusted to the care of the SALESIANS, including Petitioner.

15.

At all times relevant hereto, each of the Provincial Leaders of SISTERS ("the Sisters Provincial"), by virtue of their respective office, acted as managing agents of the SISTERS and were ultimately responsible for the supervision, oversight, management, retention, and control of the actions and conduct of all SISTERS' members, including HAGAN, as well as the safety and well-being of the children entrusted to the care of the SISTERS, including Petitioner.

16.

At all times relevant hereto, THE PERPETRATORS each served at the pleasure of their respective Provincials, under the direct supervision of their Provincials and his/her designees, and they were otherwise subject to the authority of their respective Provincials (and his/her designees).

17.

In a purposeful effort to conceal the horrific misdeeds of priests and nuns who sexually abused kids entrusted to their care, and to protect the DEFENDANTS and their priests and nuns from scrutiny, scandal, and potential financial losses, the DEFENDANTS explicitly and implicitly, through words, actions and teachings, misrepresented to Petitioner, parishioners, and the general public that they each addressed all allegations of child sexual abuse swiftly and immediately upon learning of them.

18.

DEFENDANTS intended for the Catholic faithful and the public to believe, then, that any priest or nun with an assignment to protect and care for children had never been accused or suspected of sexual abuse of minors, and that the priest was chaste, safe to be around children, and otherwise fit for ministry. At all times relevant, this included THE PERPETRATORS, who was a priest in active ministry at the time of the misconduct alleged herein.

5

19.

As a result of those representations by the DEFENDANTS, the vulnerable Petitioner, the Catholic faithful, and the general public believed and trusted that the DEFENDANTS' priests and nuns, including THE PERPETRATORS, were benevolent and trustworthy stewards of God who were fit for ministry and the care of children, and acted only in the best interests of the communities they served, including vulnerable children at Hope Haven like the Petitioner. In reality, these misrepresentations only served to allow predators like THE PERPETRATORS to sexually abuse more children, including Petitioner.

20.

THE PERPETRATORS' sexual abuse of Petitioner was accomplished in whole or in part by virtue of THE PERPETRATORS' positions as a priest and a nun of the DEFENDANTS, and the corresponding trust that Petitioner and those entrusted with his care placed in THE PERPETRATORS as a result of their positions with the DEFENDANTS.

21.

At all times material, Petitioner, and those responsible for his safety and well-being, entrusted his safety and well-being to the DEFENDANTS and their agents, including, but not limited to, THE PERPETRATORS, and their religious superiors. DEFENDANTS' agents and employees had a corresponding obligation and duty to be solicitous for, as well as protective of, the Petitioner in the exercise of their positions of trust, confidentiality and authority.

22.

At all times relevant hereto, the DEFENDANTS owed Petitioner and those entrusted with his care a duty of good faith and fair dealing to act with the highest degree of trust and confidence. This included the duty to warn, disclose, and protect children, including Petitioner, from sexual abuse and exploitation by religious authority figures who, like THE PERPETRATORS, the DEFENDANTS falsely promoted as being fit, chaste, and moral when they knew or should have known otherwise.

23.

Upon information and belief, THE PERPETRATORS sexually abused other children before, during, and after the time they each sexually abused Petitioner. The DEFENDANTS, by

and through their agents, managers, employees, and directors, knew, or through the exercise of reasonable care, should have known that THE PERPETRATORS were serial sexual abusers of minor children, yet neither DEFENDANT took any action to protect Petitioner or other children at Hope Haven from abuse.

24.

Upon information and belief, DEFENDANTS each had additional actual or constructive notice that THE PERPETRATORS had a sexual interest in children and that they regularly used their positions with DEFENDANTS to groom, sexually abuse, and silence minor children prior to 1976.

25.

Upon information and belief, despite what each DEFENDANT knew or should have known by 1976, each of the DEFENDANTS failed to warn Petitioner, law enforcement, parishioners, the general public, and/or others outside the DEFENDANTS' inner sanctums about THE PERPETRATORS' propensities to sexually abuse minor children.

26.

At all times relevant, DEFENDANTS' Provincials each knew of a general problem of members under their supervision and control grooming and sexually molesting children who came into contact with their assailants by virtue of their positions with DEFENDANTS. At all relevant times, the DEFENDANTS' Provincials each knew that this was a widespread, ubiquitous, and systemic problem within their ranks involving many abusers and numerous victims.

27.

Despite receiving credible allegations of sexual abuse of children by members of their Orders, each of the DEFENDANTS acted to conceal these allegations in an effort to avoid scandal and accountability.

28.

This concealment was in accordance with a policy of the DEFENDANTS as agents and the Holy See as principal. In 1922, the Holy See released a confidential document to its bishops and other officials of Catholic organizations regarding the handling of cases of solicitation of sex in the confessional by priests. This document mandated a specific procedure for the Holy See's

agents, including the religious superiors who received it, to use when a cleric sexually abused children using the confessional. This document required that the matter be handled with the strictest of secrecy by all involved. The 1922 document showed that the Holy See and its agents were fully aware that there was a systemic problem of Roman Catholic clergy sexually molesting children and wanted to alert its agents, including DEFENDANTS' agents, of the problem.

29.

In 1962, the Holy See released the confidential document, "*Instruction on the Manner of Proceeding in Cases of Solicitation*" (The Vatican Press, 1962) (hereinafter "*Crimen Sollicitationis*"). The heading of the document states, "from the Supreme and Holy Congregation of the Holy Office to all patriarchs, Bishops, bishops and other diocesan ordinaries 'even of the oriental right,'" and it contains specific instructions regarding the handling of child sexual abuse by clergy. According to the document itself, it is an instruction, ordering upon those to whom it pertains to follow a specific protocol while addressing allegations of child sexual abuse, and to keep all matters relating to allegations of sexual abuse, including the existence of the document itself, secret. It also directed the document be stored in the secret archives of its agents, to become part of the agents' institutional knowledge and direction.

30.

*Crimen Sollicitationis* reinforced that the Holy See and its agents, including the DEFENDANTS, had knowledge that there was a general and systemic problem of Catholic clergy sexually molesting children they encountered by virtue of their positions as priests even before 1962. Nothing in the 1922 document or in *Crimen Sollicitationis* suggested that the problem of religious authority figures sexually abusing children was limited only to ordained diocesan priests, but rather that it was a widespread problem in the worldwide Roman Catholic Church as a whole. The documents each put recipients on notice of a broader problem of religious figures misusing their roles as religious authority figures to accomplish the sexual abuse of children, including religious order priest, as well as men and women religious, including nuns.

31.

Based upon what it knew about its priests generally, and what it knew or should have known about THE PERPETRATORS specifically, the DEFENDANTS knew or should have

known that THE PERPETRATORS posed a foreseeable risk of harm to minor children before 1976, including but not limited to, Petitioner.

32.

Despite actual and/or constructive knowledge of THE PERPETRATORS' deviant sexual interests and behaviors with minor children, the DEFENDANTS undertook no meaningful investigation or responsive action against THE PERPETRATORS whatsoever and continued to give each of them unfettered access to minor children entrusted to their care at Hope Haven, including Petitioner.

33.

DEFENDANTS placed THE PERPETRATORS in positions to do harm to third parties they encountered by virtue of their positions with DEFENDANTS, including Petitioner. THE PERPETRATORS used their positions to identify potential victims and to gain their trust and exercise authority over them. It was reasonably foreseeable to the DEFENDANTS that THE PERPETRATORS would use their positions with the DEFENDANTS to sexually abuse and exploit those they encountered by virtue of their positions with DEFENDANTS, including Petitioner.

34.

DEFENDANTS each committed additional acts and omissions regarding THE PERPETRATORS' sexual abuse of Petitioner that have not yet been made public but that made Petitioner vulnerable to sexual abuse by THE PERPETRATORS.

35.

Petitioner and those entrusted with his care had no opportunity to protect Petitioner against a danger that was solely within the knowledge of the DEFENDANTS.

36.

The DEFENDANTS created a foreseeable risk of sexual abuse by THE PERPETRATORS for the Petitioner, specifically, and for minor children who encountered THE PERPETRATORS through their work generally. Despite this, the DEFENDANTS each: (1) failed to take necessary precautions to warn Petitioner (or anyone else) about THE PERPETRATORS' propensity to sexually abuse minor children entrusted to their care and counsel, (2) failed to adequately supervise

THE PERPETRATORS, (3) failed to adequately supervise the Petitioner, (4) failed to take appropriate remedial action when they knew or should have known of the risk created, and (5) otherwise failed to act to lessen the risk that THE PERPETRATORS would sexually abuse the Petitioner.

**COUNT ONE**
*SALESIANS OF DON BOSCO*
*(a/k/a SALESIANS OF DON BOSCO, CANADA AND EASTERN USA)*
*(a/k/a SALESIANS OF DON BOSCO, PROVINCE OF ST. PHILIP THE APOSTLE)*
*(d/b/a SALESIAN SOCIETY, INC.)*
**NEGLIGENCE**

37.

Petitioner incorporates paragraphs 1 through 36 of this Complaint as if set forth fully herein.

38.

At all times relevant, a servant-master relationship existed between SALESIANS and ROONEY such that the SALESIANS controlled the means and manner of the performance of ROONEY's job duties, including his conduct with minor children. Based upon what it knew or should have known about ROONEY's sexual interest in minor children, SALESIANS had a duty to control ROONEY's conduct during all times that he was acting, or otherwise empowered to act, as a priest, including but not limited to, controlling his actions with children he encountered by virtue of his position as a priest, like Petitioner.

39.

At all times relevant, a servant-master relationship existed between SALESIANS and ROONEY whereby ROONEY was granted significant freedom to perform his job duties as Roman Catholic priest, and to exercise his position of trust and authority over children entrusted to SALESIANS' care, including the then-minor Petitioner.

40.

At all times relevant, a servant-master relationship existed between ROONEY and SALESIANS that required SALESIANS to act with reasonable care in the supervision of ROONEY's performance of his job duties, including properly supervising ROONEY's

10

interactions with minor children, as well as ROONEY's adherence to SALESIANS' policies and procedures regarding minor children.

41.

At all times relevant, a servant-master relationship existed between ROONEY and SALESIANS that required SALESIANS to act with reasonable care in its retention of ROONEY based upon what it knew or should have known about his unfitness for ministry, including a duty to take further action(s) such as investigation, discharge, or reassignment to a position that did not allow him access to minor children once it knew or should have known of ROONEY's sexual interest in children.

42.

At all times relevant hereto, SALESIANS' own negligence as ROONEY's employer created the risk of harm to Petitioner, and, as a result, SALESIANS had a common-law duty to make a reasonable effort to avoid further harm to others, including Petitioner.

43.

At all times relevant hereto, SALESIANS had a duty to protect third parties, including but not limited to the Petitioner, who were within the foreseeable risk of harm created by ROONEY because that risk was not readily discoverable by Petitioner prior to his sexual abuse, due in large part to SALESIANS' grand scheme to ignore, misrepresent, and otherwise coverup sexual abuse allegations so they did not become known outside SALESIANS' inner sanctum.

44.

At all relevant times, SALESIANS knew, or in the exercise of reasonable care, should have known that ROONEY was unfit, dangerous, and a threat to the health, safety and welfare of those entrusted to his care as SALESIANS' employee, including minor children like Petitioner.

45.

Given actual and/or constructive knowledge of ROONEY's propensity to sexually abuse minor children, the sexual abuse of Petitioner was reasonably foreseeable to SALESIANS.

46.

With such actual or constructive knowledge, SALESIANS provided ROONEY with unfettered access to children, including Petitioner. Despite knowing that children who

encountered ROONEY by virtue of his position as a priest were in the zone of foreseeable risk for sexual abuse by ROONEY, SALESIANS failed to take necessary precautions to lessen that risk.

47.

At all relevant times, SALESIANS created an environment which fostered sexual abuse of children that it had a duty to protect, including Petitioner.

48.

At all relevant times, SALESIANS had inadequate policies and procedures to protect those entrusted to its care and protection, including Petitioner.

49.

As a result of the failure to act with reasonable care toward the Petitioner, SALESIANS breached one or more of the duties owed to Petitioner and failed to protect him from the sexual abuse and lewd and lascivious acts committed by ROONEY while he was an agent and employee of SALESIANS, at times when ROONEY was authorized by SALESIANS to present himself as a priest and at locations in the possession and control of SALESIANS.

50.

As a direct and proximate result of SALESIANS' failure to act with reasonable care in the discharge of one or more of its duties to Petitioner, Petitioner suffered severe and permanent psychological, emotional, and physical injuries, shame, humiliation, and the inability to lead a normal life. He has incurred, and will continue to incur, costs for treatment. These injuries are permanent and ongoing in nature.

51.

Therefore, Petitioner now seeks compensatory and punitive damages for Defendant SALESIANS' negligence.

### COUNT TWO
*SCHOOL SISTERS OF NOTRE DAME CENTRAL PACIFIC PROVINCE, INC.*
*(f/k/a SCHOOL SISTERS OF NOTRE DAME OF THE SOUTH CENTRAL PROVINCE)*
<u>NEGLIGENCE</u>

52.

Petitioner incorporates paragraphs 1 through 36 of this Complaint as if set forth fully herein.

53.

At all times relevant, a servant-master relationship existed between HAGAN and the Defendant SISTERS such that the Defendant SISTERS controlled the means and manner of the performance of HAGAN's job duties, including her conduct with minor children. Based upon what it knew or should have known about HAGAN's sexual interest in minor children, Defendant SISTERS had a duty to control HAGAN's conduct during all times that she was acting, or otherwise empowered to act, as a nun, including but not limited to, controlling her actions with children she encountered by virtue of her position as a nun, like Petitioner.

54.

At all times relevant, a servant-master relationship existed between SISTERS and HAGAN whereby HAGAN was granted significant freedom to perform her job duties as nun, and to exercise her position of trust and authority over children entrusted to SISTERS' care, including the then-minor Petitioner.

55.

At all times relevant, a servant-master relationship existed between HAGAN and the Defendant SISTERS that required the Defendant SISTERS to act with reasonable care in the supervision of HAGAN's performance of her job duties, including properly supervising HAGAN's interactions with minor children she encountered by virtue of her position as a nun, as well as HAGAN's adherence to Defendant SISTERS' policies and procedures regarding minor children.

56.

At all times relevant, a servant-master relationship existed between HAGAN and the Defendant SISTERS that required the Defendant SISTERS to act with reasonable care in its retention of HAGAN based upon what it knew or should have known about her unfitness for her position with SISTERS, including a duty to take further action(s) such as investigation, discharge, or reassignment to a position that did not allow her access to minor children once it knew or should have known of HAGAN's sexual interest in children.

57.

At all times relevant hereto, the Defendant SISTERS' own negligence as HAGAN's employer created the risk of harm to Petitioner, and, as a result, the Defendant SISTERS had a common-law duty to make a reasonable effort to avoid further harm to others, including Petitioner.

58.

At all times relevant hereto, the Defendant SISTERS had a duty to protect third parties, including but not limited to the Petitioner, who were within the foreseeable risk of harm created by HAGAN because that risk was not readily discoverable by Petitioner prior to his sexual abuse, due in large part to the Defendant SISTERS' grand scheme to ignore, misrepresent, and otherwise coverup sexual abuse allegations so they did not become known outside the Defendant SISTERS' inner sanctum.

59.

At all relevant times, the Defendant SISTERS knew, or in the exercise of reasonable care, should have known that HAGAN was unfit, dangerous, and a threat to the health, safety, and welfare of those entrusted to her care as SISTERS's employee, including minor children like Petitioner.

60.

Given actual and/or constructive knowledge of HAGAN's propensity to sexually abuse minor children, the sexual abuse of Petitioner was reasonably foreseeable to the Defendant SISTERS.

61.

With such actual or constructive knowledge, the Defendant SISTERS provided HAGAN with unfettered access to children, including Petitioner. Despite knowing that children who encountered HAGAN by virtue of her position as a nun were in the zone of foreseeable risk for sexual abuse by HAGAN, Defendant SISTERS failed to take necessary precautions to lessen that risk.

62.

At all relevant times, the Defendant SISTERS created an environment which fostered sexual abuse of children that it had a duty to protect, including Petitioner.

63.

At all relevant times, the Defendant SISTERS had inadequate policies and procedures to protect those entrusted to its care and protection, including Petitioner.

64.

As a result of the failure to act with reasonable care toward the Petitioner, the Defendant SISTERS breached one or more of the duties owed to Petitioner and failed to protect him from the sexual abuse and lewd and lascivious acts committed by HAGAN while she was an agent and employee of Defendant SISTERS, at times when HAGAN was authorized by the Defendant SISTERS to present herself as a nun and at locations in the possession and control of the Defendant SISTERS.

65.

As a direct and proximate result of the Defendant SISTERS' failure to act with reasonable care in the discharge of one or more of its duties to Petitioner, Petitioner suffered severe and permanent psychological, emotional, and physical injuries, shame, humiliation, and the inability to lead a normal life.  He has incurred, and will continue to incur, costs for treatment.  These injuries are permanent and ongoing in nature.

66.

Therefore, Petitioner now seeks compensatory and punitive damages for Defendant SISTERS' negligence.

### COUNT THREE
*SALESIANS OF DON BOSCO*
*(a/k/a SALESIANS OF DON BOSCO, CANADA AND EASTERN USA)*
*(a/k/a SALESIANS OF DON BOSCO, PROVINCE OF ST. PHILIP THE APOSTLE)*
*(d/b/a SALESIAN SOCIETY, INC.)*
<u>VICARIOUS LIABILITY</u>

67.

Petitioner incorporates paragraphs 1 through 36 of this Complaint as if set forth fully herein.

68.

The sexual abuse of Petitioner by ROONEY was accomplished by virtue of his position as a Roman Catholic Priest employed by SALESIANS, a position which made him an authority figure

to and engendered the trust of children entrusted to SALESIANS' care, including the then-minor Petitioner.

73.

ROONEY's sexual abuse of Petitioner occurred on premises owned, operated, possessed, and/or otherwise controlled by SALESIANS and during ROONEY's hours of employment with SALESIANS.

74.

Petitioner's sexual abuse by ROONEY was reasonably incidental to the performance of ROONEY's duties as SALESIANS' employee.

75.

ROONEY's sexual abuse of Petitioner was primarily and directly rooted in his employment by SALESIANS and could not have occurred by for the authority, freedom, and trust granted him by SALESIANS.

76.

Defendant SALESIANS is vicariously liable for the acts and omissions of its agents, including but not limited to, ROONEY, under L.S.A.-C.C. Arts. 2315, 2317, and 2320, and/or the doctrine of *respondeat superior*, during the time that they were acting as employees and/or agents of the Defendant SALESIANS, or otherwise exercising the positions of trust and authority granted to them by Defendant SALESIANS.

### COUNT FOUR
*SCHOOL SISTERS OF NOTRE DAME CENTRAL PACIFIC PROVINCE, INC.*
*(f/k/a SCHOOL SISTERS OF NOTRE DAME OF THE SOUTH CENTRAL PROVINCE)*
<u>VICARIOUS LIABILITY</u>

77.

Petitioner incorporates paragraphs 1 through 36 of this Complaint as if set forth fully herein.

78.

The sexual abuse of Petitioner by HAGAN was accomplished by virtue of her position as a Roman Catholic nun employed by SISTERS, a position which made her an authority figure to

and engendered the trust of children entrusted to SISTERS' care, including the then-minor Petitioner.

79.

HAGAN's sexual abuse of Petitioner occurred on premises owned, operated, possessed, and/or otherwise controlled by SISTERS and during HAGAN's hours of employment with SISTERS.

80.

Petitioner's sexual abuse by HAGAN was reasonably incidental to the performance of HAGAN's duties as SISTERS's employee.

81.

HAGAN's sexual abuse of Petitioner was primarily and directly rooted in her employment by SISTERS and could not have occurred by for the authority, freedom, and trust granted her by SISTERS.

82.

Defendant SISTERS is vicariously liable for the acts and omissions of its agents, including but not limited to, HAGAN, under L.S.A.-C.C. Arts. 2315, 2317, and 2320, and/or the doctrine of *respondeat superior*, during the time that they were acting as employees and/or agents of the Defendant SISTERS, or otherwise exercising the positions of trust and authority granted to them by Defendant SISTERS.

83.

The actions of DEFENDANTS outlined above constitute wanton and reckless disregard for the rights and safety of Petitioner through criminal sexual activity under Louisiana Civil Code art. 2315.7. Petitioner therefore seeks and is entitled to an award for exemplary damages.

**JURY DEMAND**

84.

Petitioner is entitled to and prays for a trial by jury as to all claims asserted herein.

WHEREFORE, Petitioner, LARRY POLIZZI, prays that DEFENDANTS, SALESIANS OF DON BOSCO (a/k/a SALESIANS OF DON BOSCO, CANADA AND EASTERN USA)

(a/k/a SALESIANS OF DON BOSCO, PROVINCE OF ST. PHILIP THE APOSTLE) (d/b/a SALESIAN SOCIETY, INC.); and SCHOOL SISTERS OF NOTRE DAME CENTRAL PACIFIC PROVINCE, INC. (f/k/a SCHOOL SISTERS OF NOTRE DAME OF THE SOUTH CENTRAL PROVINCE); ABC INSURANCE COMPANY & XYZ INSURANCE COMPANY be cited and served with this Petition for Damages and that after due proceedings are had that there be judgment in favor of Petitioner and against DEFENDANTS in an amount that will fully compensate Petitioner for physical injury, mental and emotional pain and suffering, humiliation, anger, psychological damage and/or impairment, diminished quality of life, loss of enjoyment of life, together with legal interest from the date of a judicial demand until paid, all costs of these proceedings, and for all general and equitable relief as may be determined by a judge and jury.

RESPECTFULLY SUBMITTED:
THE BEZOU LAW FIRM

Jacques F. Bezou (7037)
Jacques F. Bezou, Jr. (33728)
Payton S. Lachney (39947)
534 E. Boston Street
Covington, LA 70433
Telephone: (985) 892-2111
Facsimile: (985) 892-1413
jb2@bezou.com

-    and    -

Adam D. Horowitz
adam@adamhorowitzlaw.com
Jessica D. Arbour
jessica@adamhorowitzlaw.com
Horowitz Law
110 E. Broward Blvd.
Suite 1850
Ft. Lauderdale, FL 33301
(954) 641-2100
(*Pro Hac Vice* Application/Motion
to be filed)

*ATTORNEYS FOR PETITIONER*

19th JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO._____                                    DIVISION "___"

LARRY POLIZZI

VERSUS

SALESIANS OF DON BOSCO (a/k/a SALESIANS OF DON BOSCO, CANADA AND
EASTERN USA) (a/k/a SALESIANS OF DON BOSCO, PROVINCE OF ST. PHILIP THE
APOSTLE) (d/b/a SALESIAN SOCIETY, INC.); SCHOOL SISTERS OF NOTRE DAME
CENTRAL PACIFIC PROVINCE, INC. (f/k/a SCHOOL SISTERS OF NOTRE DAME OF
THE SOUTH CENTRAL PROVINCE); ABC INSURANCE COMPANY & XYZ
INSURANCE COMPANY

FILED: _____         _____
                                           DEPUTY CLERK

### CERTIFICATE OF ATTORNEY

1.    I am a licensed attorney in the State of Louisiana.

2.    I have reviewed and am otherwise familiar with the relevant facts of this case.

3.    Prior to the filing of this action, I consulted with Dr. Edward Shwery, a licensed

       mental health practitioner practicing in the State of Louisiana, who has conducted

       an interview of the Petitioner and who I reasonably believe has knowledge of the

       facts and issues involved in this particular action.

4.    Based upon my review of the relevant facts in this case, as well as my consultation

       with Dr. Shwery, I have concluded that there is reasonable and meritorious cause

       for the filing of the attached Petition for Damages.

Signed this _10th_ day of March, 2022.

                                 _____
                                 JACQUES F. BEZOU, JR.
                                 THE BEZOU LAW FIRM

*PLEASE SERVE:*

SALESIANS OF DON BOSCO (a/k/a SALESIANS OF DON BOSCO, CANADA AND EASTERN USA) (a/k/a SALESIANS OF DON BOSCO, PROVINCE OF ST. PHILIP THE APOSTLE) (d/b/a SALESIAN SOCIETY, INC.)

Through its registered agent in Louisiana:

      Rev. Louis Molinelli, *S.D.B.*
      Archbishop Shaw High School
      1000 Salesian Lane
      Marrero, LA 70072

SCHOOL SISTERS OF NOTRE DAME CENTRAL PACIFIC PROVINCE, INC. (f/k/a SCHOOL SISTERS OF NOTRE DAME OF THE SOUTH CENTRAL PROVINCE)

Through its registered agent:

      Sr. Mary Anne Owens, *SSND*
      320 East Ripa
      St. Louis, MO 63125

ABC HOLD SERVICE

XYZ HOLD SERVICE

EAST BATON ROUGE PARISH
Filed Mar 10, 2022 10:41 AM
Deputy Clerk of Court
E-File Received Mar 10, 2022 9:27 AM

C-716692
27

**EDWARD HALIE SHWERY, PH.D.**
A PROFESSIONAL PSYCHOLOGY CORPORATION
1 Galleria Blvd.
Suite 1900
METAIRIE, LOUISIANA 70001
PHONE: (504) 833-6999
FAX: 877 302 6701
EMAIL: shwery@gmail.com

CLINICAL PSYCHOLOGY
FORENSIC PSYCHOLOGY
CHRONIC PAIN MANAGEMENT

DIPLOMATE
AMERICAN ACADEMY OF
PAIN MANAGEMENT

February 23, 2022

Certificate of Mental Health Practitioner

I am a licensed clinical psychologist in Louisiana (License # 289). I have interviewed Mr. Larry Polizzi and am knowledgeable of the relevant facts and issues involved in the action to be filed on his behalf by Covington, LA attorney Mr. Jacques F. Bezou, Jr. In my professional opinion, there is a reasonable basis to believe that Larry Polizzi was subjected to criminal sexual abuse during childhood by a priest in the Hope Haven Catholic School in New Orleans, LA.

Very truly yours,

Edward Halie Shwery, Ph.D.
Clinical and Forensic Psychologist