# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LARRY POLIZZI | CIVIL ACTION |
| V. | 22-227-SDD-RLB |
| SALESIANS OF DON BOSCO (a/k/a SALESIANS OF DON BOSCO, CANADA AND EASTERN USA) (a/k/a SALESIANS OF DON BOSCO, PROVINCE OF ST. PHILIP THE APOSTLE) (d/b/a SALESIAN SOCIETY, INC.); SCHOOL SISTERS OF NOTRE DAME CENTRAL PACIFIC PROVINCE, INC. (f/k/a SCHOOL SISTERS OF NOTRE DAME OF THE SOUTH CENTRAL PROVINCE); ABC INSURANCE COMPANY & XYZ INSURANCE COMPANY | |

## RULING

This matter is before the Court on a *Motion to Dismiss or Alternative Motion for a More Definite Statement*[1] filed by Defendant School Sisters of Notre Dame Central Pacific Province, Inc. ("School Sisters") and a *Motion to Dismiss or Alternative Motion for a More Definite Statement*[2] filed by Defendant Salesian Society, Inc. ("Salesian Society"). Plaintiff, Larry Polizzi ("Plaintiff"), filed an *Omnibus Opposition*[3] to the *Motions* of Sisters and Salesian Society (collectively, "Defendants"). For the following reasons, the Court will DENY the Defendants' *Motions*.

---

[1] Rec. Doc. 5.
[2] Rec. Doc. 6.
[3] Rec. Doc. 13.

I.   **BACKGROUND**

Plaintiff filed this suit alleging that he was sexually abused as a child by clergy members who were employed by and/or under the supervision of Defendants.[4] The alleged abuse occurred over several months in 1976 while Plaintiff was residing at Hope Haven, a residential facility for orphans and troubled teens located in Marrero, Louisiana.[5] Plaintiff names Father Sean Leo Rooney, S.D.B. ("Fr. Rooney") and Sister Alvin Marie Hagan, SSND ("Sr. Hagan") as his abusers.[6] He claims Fr. Rooney and Sr. Hagan were provided access to the then-minor by virtue of their respective positions with Defendants, Salesian Society and School Sisters.

As religious orders of the Roman Catholic Church, the Defendants were allegedly responsible for assigning priests and nuns to operate Hope Haven and the adjoining residential facility, Madonna Manor.[7] Plaintiff claims that Defendants knew or should have known that Fr. Rooney and Sr. Hagan were serial sexual abusers yet failed to protect Plaintiff or other children at Hope Haven from such abuse.[8] In his *Complaint*, Plaintiff separately asserts claims of negligence and vicarious liability against each Defendant.[9]

Defendants move for Rule 12(b)(6) dismissal of Plaintiff's claims arguing that Hope Haven was neither owned nor operated by the Salesian Society or the School Sisters at the times referenced in the *Complaint*.[10] They further claim the *Complaint* consists of unfounded conclusions to which they cannot meaningfully respond; thus, they

---

[4] Rec. Doc. 1-2, p. 3.
[5] *Id.* at pp. 2-3.
[6] *Id.* at p. 3.
[7] *Id.* at p. 2.
[8] *Id.* at pp. 11, 14.
[9] *See* Rec. Doc. 1-2.
[10] Rec. Doc. 5-1; Rec. Doc. 6-1.

alternatively move for a more definite statement under Rule 12(e).[11] Plaintiff opposes the Motions.[12]

## II.   LAW & ANALYSIS

### A. Motions to Dismiss

#### 1. Rule 12(b)(6) Standard

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."'"[13] The Court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[14] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[15]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[16] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[17] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference

---

[11] *Id.*
[12] Rec. Doc. 13.
[13] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[14] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[15] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).
[16] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted).
[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

that the defendant is liable for the misconduct alleged."[18] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[19] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[20] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[21]

Defendants move for dismissal under Rule 12(b)(6) for Plaintiff's alleged failure to state a claim upon which relief may be granted. Salesian Society joins School Sisters in arguing that Plaintiff's *Complaint* consists of sweeping legal conclusions that are unsupported by factual allegations. They claim that Plaintiff confuses separate religious orders, facilities, and individuals and fails to allege how Defendants are responsible for abuse that occurred at a facility they neither owned nor staffed. Per School Sisters, the residential facility identified in the *Complaint* was owned by the Archdiocese of New Orleans, operated by Catholic Charities, and staffed by the Salesian religious Order.[22] Per the Salesian Society, the facility was owned and staffed by the Archdiocese of New Orleans and operated by Catholic Charities.[23]

Plaintiff relegates Defendants' arguments as mischaracterizing the allegations in the *Complaint*. The determination of ownership and staffing of Hope Haven would require the Court to look outside the *Complaint* and supporting documents, which is an improper

---

[18] *Id*.
[19] *Id*.
[20] *Taha v. William Marsh Rice Univ.*, No. H-11-2060, 2012 WL 1576099, at *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[21] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[22] Rec. Doc. 5-1, p. 5.
[23] Rec. Doc. 6-1, p. 4.

consideration on a Rule 12(b)(6) motion. Moreover, the theories of liability in the *Complaint* are not based exclusively on the ownership of Hope Haven as Defendants indicate. Plaintiff alleges that a master-servant relationship existed between the Salesian Society and Fr. Rooney and between the School Sisters and Sr. Hagan.[24] From there, he asserts negligence and vicarious liability claims against each Defendant separately.

### 2. Negligence claims

The elements of a Louisiana negligence claim are: (1) duty; (2) breach of duty; (3) cause-in-fact; (4) scope of liability or scope of protection; and (5) damages.[25] "When an employer hires an employee who in the performance of his duties will have a unique opportunity to commit a tort against a third party, he has a duty to exercise reasonable care in the selection of that employee."[26] "The primary focus is whether the 'the employment gave the tortious/criminal employees "unique opportunities" to commit their wrongdoing.'"[27]

The facts of the *Complaint* allege that: Fr. Rooney and Sr. Hagan were employed and empowered by the Salesian Society and School Sisters, respectively, at the time of the alleged abuse; Fr. Rooney's position as a Roman Catholic Priest and Sr. Hagan's position as a nun made them authority figures and provided them with access to the orphans and troubled youth living at Hope Haven and entrusted to the care of the Salesian Society and School Sisters; Plaintiff was living at Hope Haven, a facility adjacent to Madonna Manor, at the time of the abuse; and Plaintiff was entrusted to the care of

---

[24] Rec. Doc. No. 1-2, pp. 10, 13.
[25] *Gomez v. Galman*, 18 F.4th 769, 780 (5th Cir. 2021).
[26] *Kelley v. Dyson*, 08-1202, p. 7 (La. App. 5 Cir. 3/24/09), 10 So.3d 283, 287; *see Gomez*, 18 F.4th 769 at 780.
[27] *Gomez*, 18 F.4th at 780 (quoting *Kelley*, 10 So.3d at 287-88).

Salesian Society and School Sisters at the time he was abused by their employees.[28] The Court finds that Plaintiff has alleged sufficient facts that the Defendants' employees were given the unique opportunity to access and exercise power/authority over children such as Plaintiff.

Additionally, the *Complaint* includes allegations regarding Fr. Rooney's and Sr. Hagan's history of abusing children.[29] It details how the Salesian Society has recognized Fr. Rooney's past misconduct while serving as a priest and further explains that prior to the abuse of Plaintiff, the Defendants maintained a written policy of concealing cases of sexual abuse involving their clergymen.[30] When taken together, these factual allegations result in a reasonable inference that Defendants had actual or constructive knowledge of their employees' or agents' propensity to harm children yet failed to take reasonable measures to prevent such harm. Accordingly, Plaintiff's negligence claims cannot be dismissed on the grounds that Defendants owed no responsibility or duty to protect Plaintiff from the harm alleged.

### 3. Vicarious liability claims

Under Louisiana law, an employer is liable for the acts of its employee committed in the course and scope of his employment.[31] These two terms are not synonymous. Rather, the course of employment refers to the time and place of the conduct; the scope of employment refers to the employment-related risk of injury.[32] "[A]n employee's conduct is within the course and scope of employment if the conduct is of the kind that the

---

[28] *See* Rec. Doc. 1-2.
[29] Rec. Doc. 1-2, pp. 4-7.
[30] *Id.* at pp. 4-9.
[31] *LeBrane v. Lewis*, 292 So.2d 216, 217–18 (La. 1974).
[32] *Benoit v. Capitol Mfg. Co.*, 617 So.2d 477, 479 (La. 1993).

employee is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer."[33] When determining whether an employer could be vicariously liable for an intentional tort committed by its employee, courts look to whether: (1) the tortious act was primarily employment rooted, (2) reasonably incidental to the performance of the employee's duties, (3) occurred on the employer's premises, and (4) occurred during the hours of employment.[34] However, this is not an exclusive list of factors.[35] The Louisiana Supreme Court has stated, "The particular facts of each case must be analyzed to determine whether the employee's tortious conduct was within the course and scope of his employment."[36] Essentially, once it is established that the employee acted within the course of his employment, the employer's vicarious liability hinges on whether the "purpose of serving the employer's business actuated the employee to any appreciable extent."[37]

Here, Plaintiff alleges that the sexual abuse by Fr. Rooney and Sr. Hagan occurred on premises under the control of Salesian Society and School Sisters employees during the hours of Fr. Rooney's and Sr. Hagan's employment.[38] The alleged misconduct of Fr. Rooney and Sr. Hagan can therefore be considered to have occurred within the course of their employment with the Defendants. However, the question remains whether the alleged actions fall within the scope of such employment—whether "the employee [was]

---

[33] *Crawford v. Wal-Mart Stores, Inc.*, No. 10-805-M2, 2011 WL 3206196, at *2 (M.D. La. July 26, 2011).
[34] *Id.*
[35] *Miller v. Keating*, 349 So.2d 265, 268 (La. 1977).
[36] *Baumeister v. Plunkett*, 95-2270, p. 4. (La. 5/21/96), 673 So. 2d 994, 997.
[37] *Crawford*, 2011 WL 3206196, at *2 (citing *Johnson v. Littleton*, 45,323 (La. App. 2 Cir. 5/19/10) 37 So. 3d 452).
[38] Rec. Doc. No. 1-2, pp. 16-17.

acting within the ambit of his assigned duties and also in furtherance of his employer's objective."[39]

Plaintiff alleges that the sexual abuse by Fr. Rooney was reasonably incidental to the performance of his duties as a Salesians' employee.[40] He asserts the same claim against the School Sisters for Sr. Hagan's conduct.[41] He claims Fr. Rooney and Sr. Hagan's alleged sexual abuse of Plaintiff was primarily and directly rooted in their employment and could not have occurred without the authority, freedom, and trust respectively granted to them by the Salesian Society and School Sisters.[42] The Court considers these allegations to be conclusory in nature. However, the *Complaint* contains further factual enhancement, and Plaintiff directs the Court to a line of factually similar cases where employers were vicariously liable for child abuse committed by employees who could access and have authority over children.[43]

For instance, *Booth v. Orleans Parish School Board* involved vicarious liability claims against a school board for a janitor's alleged sexual assault of a child on school property.[44] In determining whether the tortious conduct was reasonably incidental to the performance of the janitor's employment duties, the court considered testimony establishing that the janitor possessed keys to premises and was allowed free access to the school grounds and buildings. His status as a janitor was said to have provided him

---

[39] *Baumeister v. Plunkett*, 95-2270, p. 3. (La. 5/21/96), 673 So. 2d 994, 996.
[40] Rec. Doc. No. 1-2, p. 16.
[41] *Id.* at p. 17.
[42] *Id.* at pp. 16-17.
[43] *Booth v. Orleans Par. Sch. Bd.*, 2009-1505 (La. App. 4 Cir. 9/22/10), 49 So. 3d 919, 922; *Applewhite v. City of Baton Rouge*, 380 So.2d 119 (La. App. 1 Cir. 1979); *Samuels v. Southern Baptist Hosp.,* 594 So.2d 571, 573 (La. App. 4 Cir.1992); *Dismuke v. Quaynor,* 91 Ed. Law Rep. 1247 (La. App. 2 Cir. 4/5/94), 637 So.2d 555; *Doe v. ABC Sch.*, 2019-0983 (La. App. 1 Cir. 12/17/20), 316 So. 3d 1086, 1095; *see also, Lamkin v. Brooks* 498 So.2d 1068, 1071 (La. 1986).
[44] *Booth*, 49 So.3d at 922.

access to the young children who attended the school and, "[g]iven his prominent presence on the school's campus and the fact that he was an adult, it is natural that an eight year old child would view him as an authority figure" and not question his directives.[45] The court held that the school board could be found vicariously liable for the janitor's misconduct, and summary dismissal was improper.[46] Similarly, in *Applewhite v. City of Baton Rouge*, the City was found to be vicariously liable for the sexual assault of a teenager by police officers who used their positions of trust and authority to separate the victim from her friends before assaulting her.[47] Vicarious liability was also attributed to an employer in *Samuels v. Southern Baptist Hospital* for the rape of a patient by a hospital employee, because "[t]he scope of risks attributable to an employer increases with the amount of authority and freedom of action granted to the servant in performing his assigned tasks."[48]

Here, Plaintiff's *Complaint* states that Fr. Rooney and Sr. Hagan were "granted significant freedom" to perform their duties as a priest and nun and to exercise their authority over children by way of their employment with Defendants.[49] This was true specifically in relation to Plaintiff, who was ordered by a judge to reside at Hope Haven.[50] Echoing the sentiments in *Booth v. Orleans Parish School Board*, Plaintiff's *Complaint* notes that he was taught as a child to "revere and respect all religious authority figures, including Catholic priests and nuns," such as Fr. Rooney and Sr. Hagan.[51] As a vulnerable

---

[45] *Id.*
[46] *Id.*
[47] *Applewhite v. City of Baton Rouge*, 380 So.2d 119 (La. App. 1 Cir. 1979).
[48] *Samuels v. Southern Baptist Hosp.*, 594 So.2d 571, 573 (La. App. 4 Cir.1992) (citing *Ermert v. Hartford Inc. Co.*, 559 So.2d 467, 477 (La.1990)).
[49] Rec. Doc. 1-2, pp. 10, 13.
[50] *Id.* at p. 3.
[51] *See Booth*, 49 So.3d at 922; Rec. Doc. 1-2, p. 3.

youth, Plaintiff trusted that Defendants' priests and nuns "were benevolent and trustworthy stewards of God who were fit for ministry and the care of children."[52] However, he claims that Defendants' employees used their "unfettered access to minor children" to commit the wrongdoing.[53]

Based on the facts alleged, Fr. Rooney and Sr. Hagan's purpose of serving Defendants as least partly actuated their opportunity to sexually assault a child in Plaintiff's position.[54] The Court cannot say that no inference could be drawn from the allegations giving rise to a vicarious liability claim. Evidence may prove otherwise; however, the Court does not consider evidence at this procedural posture but, rather, takes Plaintiffs' well-pleaded allegations as true. After considering the allegations in the *Complaint* and the applicable jurisprudence, the Court finds that Defendants are not entitled to dismissal under Rule 12(b)(6).

### B. Alternative Motions for a More Definite Statement

Having found that the *Complaint*, on its face, contains sufficient facts to reasonably infer that Defendants could be liable for the harm alleged, the Court also finds the facts are sufficient to require a response by Defendants. Contrary to Defendants' assertions, the allegations in the *Complaint* are not legal conclusions simply couched as factual allegations. While the Court acknowledges that some of Plaintiff's allegations could be more concise, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision."[55] Moreover, "Rule 12(e) is not intended to be used as a vehicle for discovery or to frustrate Rule

---

[52] Rec. Doc. 1-2, p. 6.
[53] *Id.* at p. 9.
[54] *See Doe v. ABC Sch.*, 316 So.3d at 1095.
[55] *McManus v. Fleetwood Enterprises, Inc.*, 320 F.3d 545, 551 (5th Cir. 2003).

8(a)(2)'s minimal pleading requirements by compelling plaintiff to amend [his] complaint when it otherwise suffices to withstand a motion to dismiss."[56] Accordingly, the Court will not grant Defendants' *Alternative Motions for a More Definite Statement*.[57]

## III. CONCLUSION

For the reasons set forth above, the *Motion to Dismiss or Alternative Motion for a More Definite Statement*[58] filed by Defendant School Sisters of Notre Dame Central Pacific Province, Inc. is hereby DENIED. The *Motion to Dismiss or Alternative Motion for a More Definite Statement*[59] filed by Defendant Salesian Society, Inc. is hereby DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana the 22nd day of March, 2023.

_____
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[56] *Doe ex rel. Doe v. Harris*, CIV.A. No. 14-0802, 2014 WL 4207599, at *4 (W.D. La. Aug. 25, 2014) (citing *Mitchell v. E–Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959)).
[57] Rec. Doc. 5; Rec. Doc. 6.
[58] Rec. Doc. 5.
[59] Rec. Doc. 6.