UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LARRY POLIZZI | CIVIL ACTION |
| VERSUS | |
| SALESIANS OF DON BOSCO, ET AL. | 22-227-SDD-EWD |

<u>RULING</u>

Before the Court is a Motion to Dismiss[1] filed jointly by Defendants, Salesians of Don Bosco ("SDB") and School Sisters of Notre Dame Central Pacific Province, Inc. ("SSND") (collectively, "Defendants"). Plaintiff, Larry Polizzi ("Plaintiff"), opposes the Motion.[2] The Louisiana Attorney General filed an amicus brief in support of Plaintiff.[3] Defendants subsequently filed a Reply.[4] For the reasons that follow, the Motion will be denied.

I.  **BACKGROUND**

Plaintiff filed this action alleging that he was sexually abused as a child by clergy members who were employed by and/or under the supervision of Defendants.[5] The abuse allegedly occurred "[o]ver the course of several months in approximately 1976," while Plaintiff was housed at a facility for orphans and troubled children called Hope Haven.[6] Plaintiff names Father Sean Leo Rooney, SDB ("Fr. Rooney") and Sister Alvin Marie

---

[1] Rec. Doc. 41.
[2] Rec. Doc. 45.
[3] Rec. Doc. 49.
[4] Rec. Doc. 56.
[5] Rec. Doc. 1-2, p. 3.
[6] *Id.*

Hagan, SSND ("Sr. Hagan") as his abusers.[7] Plaintiff asserts claims of negligence and vicarious liability, alleging that Defendants knew or should have known that Fr. Rooney and Sr. Hagan were serial sexual abusers yet failed to protect Plaintiff or other children at Hope Haven from such abuse.[8]

Louisiana Revised Statute 9:2800.9 applies to claims arising from abuse of a minor. The statute previously set forth a ten-year period of liberative prescription for such claims. However, in 2021, La. R.S. 9:2800.9 was amended through 2021 La. Acts No. 322 ("Act 322") to provide that such claims do not prescribe. The same amendment also provides:

> Section 2. For a period of three years following the effective date of this Act, any party whose action under R.S. 9:2800.9 was barred by liberative prescription prior to the effective date of this Act shall be permitted to file an action under R.S. 9:2800.9 against a party whose alleged actions are the subject of R.S. 9:2800.9. It is the intent of the legislature to revive for a period of three years any claim against a party, authorized by R.S. 9:2800.9, that prescribed prior to the effective date of this Act.[9]

In 2022, La. R.S. 9:2800.9 was amended again through 2022 La. Acts. No. 386 ("Act 386"), which provides:

> Section 2. Any person whose cause of action relating to sexual abuse of a minor was barred by liberative prescription shall be permitted to file an action under R.S. 9:2800.9 on or before June 14, 2024. It is the express intent of the legislature to revive until June 14, 2024, any cause of action related to sexual abuse of a minor that previously prescribed under any Louisiana prescriptive period.[10]

---

[7] *Id.*
[8] *Id.* at pp. 10–17.
[9] 2021 La. Acts No. 322.
[10] 2022 La. Acts. No. 386.

Defendants filed the instant Motion to challenge the constitutionality of Act 322 (as amended by Act 386 and 2024 La. Acts No. 481[11]). Specifically, Defendants argue the revival of otherwise prescribed causes of action in this case violates the Takings Clause of both the Louisiana and Federal Constitutions.[12]

## II. LAW AND ANALYSIS

### A. Legal Standard on Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[13] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[14] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[15]

In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[16] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[17] However, "[a] claim has facial

---

[11] The 2024 Act extended the revival window an additional three years, to June 14, 2027.
[12] Rec. Doc. 41-1.
[13] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[14] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal citations omitted).
[15] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).
[16] *Twombly*, 550 U.S. at 555 (2007) (internal citations and brackets omitted).
[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[18] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[19] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[20] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[21]

### B. Discussion

The Louisiana Supreme Court recently addressed a constitutional challenge to the revival provisions at issue here. In *Bienvenu v. Defendant 1* ("*Bienvenu* I"),[22] the court found that the revival provisions of Acts 322 and 386 violated the defendant's due process protections set forth in the Louisiana Constitution. However, on rehearing ("*Bienvenu* II"),[23] the court vacated its original decree and found the revival provisions did not violate the defendant's due process rights.

Defendants challenge the revival provisions under the Takings Clause, which was not addressed by the Louisiana Supreme Court in either of the *Bienvenu* decisions. The Takings Clause of the Fifth Amendment to the United States Constitution states in part: "[N]or shall private property be taken for public use, without just compensation."[24] The Louisiana Constitution provides:

---

[18] *Id.*
[19] *Id.*
[20] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099, at *2 (S.D. Tex. 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[21] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[22] *Bienvenu v. Defendant 1*, 2023-01194 (La. 3/22/24), 382 So. 3d 38.
[23] *Bienvenu v. Defendant 1*, 2023-01194 (La. 6/12/24), 386 So. 3d 280.
[24] U.S. Const. amend. V.

> Section 4. (A) Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
>
> (B)(1) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Except as specifically authorized by Article VI, Section 21 of this Constitution property shall not be taken or damaged by the state or its political subdivisions: (a) for predominant use by any private person or entity; or (b) for transfer of ownership to any private person or entity.[25]

Defendants argue that once prescription accrues on a claim, their right to assert the defense of prescription to defeat the claim constitutes private property protected by the Takings Clause.[26] In support of this position, Defendants emphasize the following reasoning from the *Bienvenu II* decision:

> [O]nce the prescriptive period has elapsed, the law grants the defendant the right to plead the exception of prescription in order to defeat the plaintiff's claim. The right to claim this acquired defense is a substantive property right. This right "vests" upon the expiration of the prescriptive period, and as a vested property right, it is protected by the due process guarantees.[27]

However, the court's analysis was confined to due process concerns, and Defendants have not cited a case which has recognized the right to assert prescription as a protected form of property under the Takings Clause. The district court for the Western District of Louisiana recently rejected Defendants' position, declining to "expand the meaning of property under the state constitution, especially when the Louisiana Supreme Court has so recently declared that the revival provisions pass muster under the due process

---

[25] La. Const. art. I, § 4.
[26] Rec. Doc. 41-1.
[27] *Bienvenu II*, 386 So. 3d 280, 286 (citing La. Code Civ. Proc. arts. 927 & 934; *Chance v. American Honda Motor Co., Inc.*, 93-2582 (La. 4/11/94), 635 So.2d 177, 178)) (cleaned up).

analysis traditionally applied to such infringements."[28] This Court agrees and finds the same result appropriate here. Furthermore, with respect to the United States Constitution, it has been noted that "property" under the Takings Clause is "defined much more narrowly than in the due process clauses."[29] Defendants have not cited any case which recognizes the right to assert prescription as protected under the Takings Clause of either the Federal or State Constitution.

Nonetheless, Defendants rely on the United States Supreme Court's decision in *Eastern Enterprises v. Apfel*[30] to argue that a taking has occurred here. There, the Court considered the constitutionality of the Coal Industry Retiree Health Benefit Act of 1992 (the "Coal Act"), which required previous employers to pay premiums into a fund to cover medical benefits for retired miners.[31] The defendant, Eastern, had assigned its coal-related operations to a subsidiary in 1965, and sold its interest in the subsidiary in 1987.[32] After the Coal Act was enacted, Eastern was assigned the obligation for premiums respecting over 1,000 retired miners who had worked for the company before 1966, with Eastern's premium for a 12-month period exceeding $5 million.[33] The Court found that the Coal Act effected an unconstitutional taking of Eastern's property. The Court identified three factors of particular significance in analyzing whether a regulation constitutes a taking: "[1] [T]he economic impact of the regulation, [2] its interference with reasonable investment-backed expectations, and [3] the character of the governmental action."[34]

---

[28] *C P v. Soc'y for Roman Cath. Diocese of Lake Charles*, No. 2:24-CV-01615, 2025 WL 662821, at *3 (W.D. La. Feb. 28, 2025).
[29] *Id.* (quoting *Corn v. City of Lauderdale Lakes*, 95 F.3d 1066, 1075 (11th Cir. 1996) (citing *Pittman v. Chicago Bd. of Educ.*, 64 F.3d 1098, 1104 (7th Cir. 1995)).
[30] *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998).
[31] *Id.* at 514–15.
[32] *Id.* at 516.
[33] *Id.* at 517.
[34] *Id.* at 523–24.

Although "Congress has considerable leeway to fashion economic legislation," the Court noted that its decisions "left open the possibility that legislation might be unconstitutional if it imposes severe retroactive liability on a limited class of parties that could not have anticipated the liability, and the extent of that liability is substantially disproportionate to the parties' experience."[35]

The Court finds Defendants' reliance on *Eastern Enterprises* unavailing. The Coal Act "require[d] Eastern to turn over a dollar amount established by the Commissioner under a timetable set by the Act, with the threat of severe penalty if Eastern fail[ed] to comply."[36] Eastern's cumulative payments under the Coal Act were estimated to be between $50 and $100 million, and Eastern's "obligations under the Act depend[ed] solely on its roster of employees some 30 to 50 years before the statute's enactment, without any regard to responsibilities that Eastern accepted under any benefit plan the company itself adopted."[37] In short, *Eastern Enterprises* presented an unanticipated government regulation that applied retroactively and resulted in significant economic harm.

The governmental action here, enacting the revival provisions, is not analogous to the economic regulation in *Eastern Enterprises*. The revival provisions do not impose a direct economic impact on Defendants like the regulation in *Eastern Enterprises*, nor do they interfere with any reasonable investment-backed expectations of Defendants. It would be disingenuous to suggest that legal consequences for child sex abuse are unanticipated. Furthermore, the character of the governmental action in this case is well-supported. In *Bienvenu II*, the Louisiana Supreme Court found that the revival provisions

---

[35] *Id.* at 528–29.
[36] *Id.* at 529.
[37] *Id.* at 531.

serve at least three "legitimate and compelling" public purposes: "(1) the provision assists in identifying hidden child predators so children will not be abused in the future; (2) shifts the costs of the abuse from the victims and society to those who actually caused it; and (3) educates the public about the prevalence and harm from child sexual abuse to prevent future abuse."[38] As stated by the district court for the Western District of Louisiana in *CP v. Society for Roman Catholic Diocese of Lake Charles*, "[t]o indemnify the [defendant] or otherwise shield it from claims brought under the revival provisions would defeat these purposes."[39] This Court agrees.[40]

For the reasons expressed above, Defendants have failed to establish a violation of the Takings Clause.

### III. CONCLUSION

Accordingly, Defendants' Motion to Dismiss[41] is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 21 day of August, 2025.

SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[38] *Bienvenu II*, 386 So. 3d at 291.
[39] *C P v. Soc'y for Roman Cath. Diocese of Lake Charles*, 2025 WL 662821, at *4.
[40] The Court additionally notes that the district court in the *CP* case certified its ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), which allows appeal when an order "involves a controlling question of law as to which there is substantial ground for difference of opinion…" However, the Fifth Circuit denied the defendant's motion for leave to appeal because it found "no substantial ground for a difference of opinion on the underlying legal question: whether La. R.S. § 9:2800.9, as amended to make claims arising out of childhood sexual abuse imprescriptible and to allow a three year 'revival' period applicable to previously prescribed claims, *see* 2021 La. Acts 322 §2; 2022 La. Acts 386 §2b, passes constitutional muster." *See C P v. Soc'y for Roman Cath. Diocese of Lake Charles*, No. 25-90010 (5th Cir. May 9, 2025) (unpublished order).
[41] Rec. Doc. 41.